## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **WINIFRED J. DAUGHERTY et al., on behalf of themselves and a class,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **No. 17 C 3736** |
| **v.** | ) ) | **Chief Judge Rubén Castillo** |
| **THE UNIVERSITY OF CHICAGO,** | ) ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Winifred J. Daugherty and Gloria Jackson, individually and as representatives of a class of participants and beneficiaries of the University of Chicago Retirement Income Plan for Employees and the University of Chicago Contributory Retirement Plan ("Plaintiffs"), bring this action pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3), against the University of Chicago ("Defendant" or the "University"), alleging breaches of fiduciary duties. (R. 1, Compl.) Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant moves to dismiss the complaint in its entirety for lack of standing and failure to state a claim, respectively. (R. 19, Def.'s Mot. to Dismiss.) Defendant also moves to strike Plaintiffs' jury demand pursuant to Federal Rule of Civil Procedure 12(f). (*Id.*) For the reasons stated below, Defendant's motion is granted in part and denied in part.

## RELEVANT FACTS

Plaintiffs are participants in the University of Chicago Retirement Income Plan for Employees ("ERIP") (R. 1, Compl. ¶¶ 19-20), and bring the present suit under 29 U.S.C. § 1132(a)(2) and (3). (*See, e.g., id.* ¶¶ 1, 8-9, 97.) Plaintiffs do not allege they are participants in

or beneficiaries of any other University pension plan. (*See id.* ¶¶ 19-21; R. 29, Opp'n at 6-10.) Plaintiffs, however, seek to bring this suit as a class action on behalf of all participants in and beneficiaries of ERIP and another University pension plan, the University of Chicago Contributory Retirement Plan ("CRP").[1] (R. 1, Compl. ¶¶ 1, 8, 99.) CRP differs from ERIP in that CRP is the pension plan available to faculty and staff members, whereas ERIP is available to the University's non-academic employees. (*Id.* ¶¶ 13, 17.)

The Plans are defined contribution, individual account, employee pension benefit plans within the meaning of 29 U.S.C. §§ 1002(2)(A) and 1002(34). (*Id.* ¶¶ 11, 15.) The Plans are a source of retirement income for many of the University's employees, faculty, and staff, and are funded through deferral of employee compensation, matching contributions by the University, and any appreciation on the Plans' investments. (*Id.* ¶¶ 13, 17.) As of December 31, 2015, ERIP had more than 23,000 individual participants and $980 million in assets, and CRP had more than 13,000 participants and $2.1 billion in assets. (*Id.* ¶¶ 14, 18.)

The University serves as the Plans' sponsor and administrator pursuant to 29 U.S.C. § 1002(16)(A)(i). (*Id.* ¶ 23.) The University has all discretionary authority necessary to administer the Plans, including the authority to: interpret the Plans' provisions; compute the amount and kind of benefits payable to participants and beneficiaries; direct the payment of the Plans' expenses from the Plans themselves; and resolve any questions relating to eligibility to participate in the Plans. (*Id.*) The University also has discretionary authority to select the Plans' investment options. (*Id.* ¶ 25.)

The Plans offer participants the choice to invest employee contributions in any of 35 investments managed by the Teachers Insurance and Annuity Association-College Retirement Equities Fund ("TIAA-CREF"), which include annuities and mutual funds. (*Id.* ¶¶ 26-27.) The

---

[1] ERIP and CRP are referred to collectively herein as the "Plans."

2

Plans also offer participants the choice to invest in more than 80 mutual funds managed by the Vanguard Group or Vanguard Fiduciary Trust Company (collectively, "Vanguard"). (*Id.* ¶¶ 26-27.) The Plans' participants may allocate their contributions to TIAA-CREF, Vanguard, or both. (*Id.* ¶ 28.)

## PROCEDURAL HISTORY

On May 18, 2017, Plaintiffs filed a complaint under 29 U.S.C. § 1132(a)(2) and (3) alleging that Defendant breached its fiduciary duties and caused the Plans to engage in loan transactions prohibited under ERISA. (R. 1, Compl.) On May 25, 2017, Plaintiffs filed a notice of voluntary dismissal of then-plaintiff Steven Millard, and the Court soon thereafter dismissed Steven Millard from the case, without prejudice. (R. 5; R. 6.)

Count I of the complaint claims that Defendant breached its fiduciary duties of loyalty and prudence by selecting and retaining investment options in the Plans that caused them and Plaintiffs to incur excessive administrative expenses. (*Id.* ¶¶ 104-110.) Count I also claims that Defendant breached its fiduciary duties of loyalty and prudence by failing to engage in a prudent process for evaluating and monitoring the administrative expenses charged by the Plans' investment options. (*Id.*) Plaintiffs more specifically allege that the TIAA Traditional Annuity,[2] CREF variable annuity accounts,[3] and the TIAA Real Estate Account[4] investment options incur much higher than a reasonable fee for administrative services when compared to "benchmark data" for administrative costs. (*Id.* ¶¶ 48-49; *see also id.* ¶¶ 33-34, 36-40.) Plaintiffs also allege that the Plans offered participants only the Vanguard investment options available to small

---

[2] The TIAA Traditional Annuity is a fixed annuity contract that earns interest on amounts invested based on a contractually-specified interest rate. (R. 1, Compl. ¶ 31.)

[3] The CREF variable annuity accounts are annuities whose value vary based on the performance of their underlying investments. (*Id.* ¶ 30.)

[4] The TIAA Real Estate Account is an annuity that aggregates assets from more than one retirement plan to invest in a fund whose assets are primarily real estate. (*See id.* ¶¶ 37, 66, 71-72.)

individual investors, instead of offering the Vanguard investment options that are available to large, institutional investors and incur less administrative expenses. (*Id.* ¶¶ 41-47.) In addition, Plaintiffs allege that the Plans' offering of a "dizzying array" of 35 TIAA-CREF and more than 80 Vanguard investment options is evidence of a flawed fiduciary decision-making process. (*Id.* ¶ 7.)

Counts II and III claim Defendant breached its fiduciary duties of loyalty and prudence by failing to monitor, evaluate, and replace as investment options the CREF Stock Account[5] and the TIAA Real Estate Account due to their underperformance and excessive administrative expenses. (*Id.* ¶¶ 112-15, 117-19.) Plaintiffs claim the CREF Stock Account has underperformed for years and continues to underperform compared to benchmarks and other investment options available to the Plans. (*Id.* ¶¶ 52, 56-62.) Defendant allegedly failed to undertake any analysis concerning the CREF Stock Account's performance or adequately monitor the fund, thereby ignoring the CREF Stock Account's underperformance. (*Id.* ¶¶ 54-55.) Had Defendant properly monitored the CREF Stock Account, Plaintiffs allege, it would have removed the CREF Stock Account as an investment option and avoided losses to the Plans' participants. (*Id.* ¶¶ 63-65.) With respect to the TIAA Real Estate Account, Plaintiffs claim that it has far higher administrative fees than is reasonable, has historically underperformed, and continues to underperform compared to alternative real estate investment options. (*Id.* ¶¶ 66-75.) Defendant allegedly failed to monitor this investment option and replace it to avoid losses to the Plans' participants, despite continued underperformance and a higher administrative cost compared to alternative investment options. (*Id.* ¶¶ 76-77.)

---

[5] The CREF Stock Account is an investment option offered by the Plans that invests at least 80% of its assets in a broadly diversified portfolio of common stocks. (*Id.* ¶ 52.)

Counts IV and V allege that Defendant breached its fiduciary duty of loyalty and engaged in a transaction prohibited under ERISA by offering through the Plans an illegal TIAA-administered loan program. (*Id.* ¶¶ 121-26, 128-33.) Plaintiffs allege that, in a typical pension plan loan program, a pension plan participant will borrow money from his or her own account investments which is accomplished through a liquidation of his or her investments to obtain the loan amount. (*Id.* ¶¶ 80-81.) Any interest that the participant pays towards the loan is credited to the participant's account, such that the participant himself or herself will earn any interest charged on the loan. (*Id.* ¶¶ 81, 83.) TIAA's loan program, on the other hand, requires a plan participant to borrow from the TIAA fund's general account and not the plan participant's individual account. (*Id.* ¶ 84.) TIAA earns any interest paid on the loan instead of the plan participant's individual account. (*Id.* ¶ 86.) Plaintiffs do not allege that they took out a loan under this program. (*See* R. 29, Opp'n at 9.) Plaintiffs allege, however, that Defendant's approval and acceptance of the TIAA loan program as an offering in the Plans is demonstrative of Defendant's flawed fiduciary decision-making process. (R. 1, Compl. ¶¶ 7, 89.)

On June 8, 2017, Defendant filed a motion to dismiss the complaint in its entirety, on jurisdictional grounds and for failure to state a claim. (R. 19, Def.'s Mot. to Dismiss.) Defendant argues that Plaintiffs lack Article III standing to pursue any claims related to CRP because they have not alleged that they are participants in CRP. (R. 22, Am. Mem. at 9-10.) Defendant also challenges Plaintiffs' standing to pursue Counts IV and V because those claims are based on the TIAA loan program, and Plaintiffs fail to allege they ever took out a loan under the TIAA loan program. (*Id.* at 10-11.) Defendant then argues that all of Plaintiffs' claims fail because they do not plausibly allege any breach of ERISA's fiduciary duties of prudence or loyalty, nor do they plausibly claim that Defendant caused prohibited transactions to occur. (*Id.* at 11-25.) Finally,

Defendant argues that the Court should strike Plaintiffs' jury demand because ERISA does not provide a right to a trial by jury. (*Id.* at 25.)

In response, Plaintiffs argue they have standing to pursue claims related to CRP because ERIP and CRP are similar, and the fact that Plaintiffs are not CRP participants might effect class certification, but not Article III standing. (R. 29, Opp'n at 7-9.) Plaintiffs argue they have standing to pursue their TIAA loan program claims because ERISA creates a private right of action to redress an ERISA fiduciary's statutory violations. (*Id.* at 9-10.) Plaintiffs then dispute Defendant's characterization of the TIAA loan program and argue that it is a patent violation of ERISA. (*Id.* at 10-13.) In response to Defendant's claims that Plaintiffs have not alleged any breach of the duty of prudence, Plaintiffs assert they have sufficiently alleged facts concerning Defendant's flawed decision-making process. (*Id.* at 13-16.) These facts, they argue, give rise to plausible claims for breach of the fiduciary duty of prudence. (*Id.*) Lastly, Plaintiffs submit that some courts have ruled that ERISA confers a right to trial by jury; therefore, the Court should not strike their jury demand. (*Id.* at 16-17.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation and internal alteration omitted). A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
"Determining whether a complaint states a plausible claim for relief will . . . be a context-
specific task that requires the reviewing court to draw on its judicial experience and common
sense." *Id.* at 679. In evaluating the sufficiency of a complaint, the Court must "construe it in the
light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all
inferences in the nonmoving party's favor." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d
285, 289-90 (7th Cir. 2016) (citation and internal alteration omitted).

A motion to dismiss pursuant to Rule 12(b)(1) challenges this Court's subject-matter
jurisdiction over the action. FED. R. CIV. P. 12(b)(1). "[I]f a plaintiff cannot establish standing to
sue . . . dismissal under [Rule] 12(b)(1) is the appropriate disposition." *American Federation of
Government Employees, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). Defendant's
Rule 12(b)(1) motion is properly understood as a facial challenge because it contends that
Plaintiffs' complaint lacks sufficient factual allegations to establish standing. *See Silha v. ACT,
Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The Court reviews a facial challenge to Plaintiffs'
standing under the same standard set forth above for a motion to dismiss for failure to state a
claim. *Id.* at 173-74.

## ANALYSIS

### I.     Documents Attached to Defendant's Motion to Dismiss

As a preliminary matter, Defendant asks the Court to consider several exhibits attached to
its motion to dismiss and reply, but Plaintiffs claim that Defendant wrongly attempts to introduce
materials outside the pleadings. (*See, e.g.*, R. 22, Am. Mem. at 3 n.1; R. 29, Opp'n at 2, 4-5; R.
34, Reply at 1, n.1.) "As a general rule, on a Rule 12(b)(6) motion, the court may consider only
the plaintiff's complaint." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002);

*see also Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion.").

" '[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim.' " *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (emphasis added) (citation omitted); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."). This "narrow exception" is "aimed at cases interpreting, for example, a contract." *188 LLC*, 300 F.3d at 735 (citation omitted); *see also Macias v. Bakersfield Rest., LLC*, 54 F. Supp. 3d 922, 927 (N.D. Ill. 2014) (explaining that a court's consideration of documents attached to a motion to dismiss is a "narrow exception" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." (citation omitted)).

The Court declines to consider the exhibits attached to Defendant's motion to dismiss. Exhibit M, an article on the CREF Stock Account written by an independent investment consultant, is the only exhibit that is even referred to in the complaint, but it is not central to the complaint—it is referenced in only one paragraph, (*see* R. 1, Compl. ¶ 62), not a copy of a

written instrument upon which the action is based,[6] and is redundant of other allegations. (*See, e.g.*, R. 1, Compl. ¶¶ 57-61 (alleging, like paragraph 62, that the TIAA-CREF Stock Account underperformed)). The Court declines to consider the remaining exhibits to Defendant's motion to dismiss because these documents are not referred to in the complaint.[7]

The Court also declines to take judicial notice of any exhibits attached to Defendant's motion to dismiss, as requested by Defendant. The Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the [Court's] territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Court's use of judicial notice on a motion to dismiss is a "narrow exception" that "merits the traditional caution it is given." *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008) (citation omitted); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (ruling that the district court could, but was

---

[6] Plaintiffs attach no plan documents to the complaint, and the motion to dismiss only attaches ERIP and CRP summary plan descriptions. (*See* R. 22, Am. Mem. (attaching "CRP Summary Plan Description 2016" and "ERIP Summary Plan Description" as Exhibits C and D)). Exhibit S to Defendant's reply appears to be a plan document, but Defendant offers Exhibit S with no context other than naming it an "ERIP Restatement." (R. 34, Reply at 13.) Thus, Defendant has not demonstrated that Exhibit S is concededly authentic as is required for the Court to consider it on a motion to dismiss. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (requiring authenticity of a document attached to a motion to dismiss to be conceded for it to be considered as part of plaintiffs' allegations); *Markin v. Chebemma, Inc.*, No. 07 C 0497, 2010 WL 1191868, at *5 (N.D. Ill. Mar. 25, 2010) ("[T]he court can consider documents attached to a motion to dismiss if the document is part of the pleadings that are referred to in the plaintiff's complaint, are central to his claim, and are properly authenticated (or authenticity is conceded).").

[7] Defendant's reliance on *Hecker* is misplaced. (*See* R. 22, Am. Mem. at 3 n.1.) There, the U.S. Court of Appeals for the Seventh Circuit upheld the district court's choice to consider exhibits attached to a motion to dismiss because they "were all documents to which the Complaint had referred, . . . were concededly authentic, and . . . central to the plaintiffs' claim." *Hecker*, 556 F.3d at 582. Here, Defendant does not argue that any of its other exhibits are referred to in the complaint except for Exhibits D, I, J, and K, nor are they referred to in the complaint based on the Court's review. Defendant claims the complaint quotes Exhibit D in paragraph 23 (R. 22, Am. Mem. at 3), but paragraph 23 references "the Summary Plan Description" for ERIP without any date and not the specific 2016 plan description Defendant attaches. Exhibits I-K are also documents from a specific date that the Complaint does not precisely refer to. *Compare* (R. 1, Compl. ¶ 52 (generally referring to a CREF Stock Account "Prospectus")), *with* (R. 22-10, Ex. I (prospectus dated May 1, 2017)); *compare* (R. 1, Compl. ¶ 52 (generally referring to "fact sheets")), *with* (R. 22-11, Ex. J (document dated March 31, 2017)); *compare* (R. 1, Compl. ¶¶ 46, 49 (alleging figures from 2009-2015)), *with* (R. 22-12, Ex. K (TIAA Real Estate prospectus dated May 1, 2017)). Based on the Court's review, the complaint does not refer to Exhibits A-C, E-H, L, and N. The Court will not consider Exhibits M and S for reasons explained above, and Exhibits O-R lack any facts relevant to the present motion. Exhibit O is a letter indicating Defendant's intent to file the present motion, and Exhibits P, Q, and R are other federal court decisions.

not required to, take notice of publicly available documents not mentioned in the complaint for the limited purpose of showing information the defendants had previously disclosed to the plaintiffs). Facts subject to judicial notice are those "not subject to reasonable dispute." *Doss*, 551 F.3d at 640 (citation omitted); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). Upon review of Defendant's exhibits, the Court cannot determine at this early stage in the case that information presented in exhibits attached to Defendant's motion to dismiss is indisputable or otherwise satisfies the above prerequisites for judicial notice.

Accordingly, for purposes of deciding Defendant's motion to dismiss, the Court will not consider any of the exhibits attached to the motion and instead will only consider the sufficiency of the complaint's allegations.

## II.     Article III Standing

Defendant first argues that Plaintiffs lack Article III standing to bring claims related to the CRP plan and the TIAA loan program because Plaintiffs fail to allege they are participants in the CRP plan or that they ever took out a loan under the TIAA loan program. (R. 22, Am. Mem. at 9-11.)

Article III of the U.S. Constitution limits the Court to deciding cases and controversies. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). "[A] plaintiff must demonstrate standing for each claim he seeks to press and each form of relief that is sought." *Id.* (citation omitted). "To establish Article III standing, the plaintiff seeking compensatory relief must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citation

omitted); *see also Schultz v. Prudential Ins. Co. of Am.*, 678 F. Supp. 2d 771, 783 (N.D. Ill. 2010) (applying the same rule for standing in ERISA cases).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation and internal alteration omitted), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). A "concrete" injury is one that actually exists and is "real," not "abstract." *Spokeo*, 136 S. Ct. at 1548. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

Plaintiffs argue that the ERIP and CRP plans are similar, and therefore the fact that Plaintiffs are not CRP participants is a class certification issue rather than one of standing. (R. 29, Opp'n at 7-9.) This argument, however, is contradicted by controlling precedent. *See Spokeo, Inc.*, 136 S. Ct. at 1547 n.6 ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." (citation omitted)); *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 958-59 (N.D. Ill. 2016) ("Plaintiffs in a class action cannot rely on unnamed plaintiffs to satisfy Article III's standing requirement."). The named plaintiffs in a class action cannot acquire standing through the injuries of unnamed class members (*id.*); therefore, Plaintiffs must

sufficiently allege that they personally possess Article III standing to proceed on their remaining claims. *See Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action." (citation omitted)).

Plaintiffs fail to dispute that they are not participants in CRP, nor do Plaintiffs point to any allegations in the complaint claiming that they are CRP participants, beneficiaries, fiduciaries or any other party that is harmed or stands to be harmed by any alleged mismanagement of CRP. (*See* R. 29, Opp'n at 6-10; R. 34, Reply at 2.) Because Plaintiffs fail to allege they are CRP participants, they fail to allege that any of the claimed fiduciary breaches or mismanagement of CRP has affected them "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Consequently, Plaintiffs lack Article III standing to pursue their CRP-related claims.

With respect to Plaintiffs' standing to pursue their TIAA loan program claims, Plaintiffs fail to allege that they took out a loan under the TIAA loan program or that they have personally suffered any actual or threatened injury as a result of the TIAA loan program. (*See* R. 1, Compl. ¶¶ 19-21; R. 29, Opp'n at 6-10). Nor do Plaintiffs clearly allege in the complaint that any plan participant took out a loan through the TIAA loan program. Plaintiffs argue, however, that they have standing to pursue their claims related to the TIAA loan programs because they "seek injunctive relief to compel the Plan fiduciaries to adopt a loan program that complies with the requirements of ERISA." (R. 29, Opp'n at 9.)

First, Plaintiffs do not clearly request that specific relief anywhere in their complaint, and the only form of injunctive relief they request is for the Court to "enjoin" plan fiduciaries "from future ERISA violations." (*See* R. 1, Compl. at 40.) Plaintiffs' demand for broad injunctive relief does not dispense of their burden to clearly allege particularized and concrete harm. Plaintiffs must show they are under threat of suffering an injury in fact "that is concrete and particularized,

the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Additionally, "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.' " *Spokeo*, 136 S. Ct. at 1547-48 (citation omitted). Plaintiffs allege that the TIAA loan program violates ERISA but fail to allege any real, immediate, and concrete harm from that program that affects them, or anyone else, in a personal and individual way. By alleging that the loan program violates ERISA and nothing more, Plaintiffs fail to clearly allege standing to assert claims related to the TIAA loan program. *See id.* at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Plaintiffs then argue that because they seek injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), they need not demonstrate individualized injury to proceed with their claims for injunctive relief. (*See* R. 29, Opp'n at 9-10.) In support of their argument, Plaintiffs cite *Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 610 (6th Cir. 2007), *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005), and *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003), but these cases are not binding authority, predate *Spokeo*, or have since been clarified to require a showing of individualized harm. *See, e.g., Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 585 (6th Cir. 2016) ("[I]t is not sufficient merely to state, as Plaintiffs do, that the plan is deficient without showing which specific fiduciary duty or specific right owed to them was infringed."); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir. 2016) ("A

bare allegation of improper defined-benefit-plan management under ERISA, without concomitant allegations that any defined benefits are even potentially at risk, does not meet the dictates of Article III[.]"), *cert. denied sub nom. Pundt v. Verizon Commc'ns, Inc.*, 137 S. Ct. 1374 (2017); *Perelman v. Perelman*, 793 F.3d 368, 375-76 (3d Cir. 2015) ("federal appellate courts have unanimously rejected" the argument that a participant has standing to sue on behalf of his or her plan without individualized injury); *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 119 (2d Cir. 2009) ("Her first argument—that ERISA, or specifically § 1132(a)(3), does not require a showing of direct injury—is a clear misstatement of law."), *abrogated on other grounds by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359-60 (2d Cir. 2016).

Because Plaintiffs do not clearly allege Article III standing for their CRP and TIAA loan program claims, the Court dismisses, without prejudice,[8] Counts I-III as they relate to CRP and Counts IV and V in their entirety.

## III. Breach of Fiduciary Duties of Prudence and Loyalty

The remaining claims are Counts I-III, which allege breach of the fiduciary duties of loyalty and prudence with respect to ERIP. Defendant argues that Plaintiffs have failed to adequately state a claim as to these Counts. (*See* R. 22, Am. Mem. at 11-21.) To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (citation omitted); *see also Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) (applying same three elements).

---

[8] *See Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) ("Dismissals for want of federal jurisdiction normally are without prejudice[.]").

Defendant does not dispute that it is a fiduciary of ERIP, nor does Defendant argue that Plaintiffs fail to plead any harm resulting from the alleged breaches of fiduciary duty. Defendant instead challenges Plaintiffs' claims on the grounds that they fail to allege any breach. (R. 22, Am. Mem. at 11-21.) The Court addresses the duty of prudence and the duty of loyalty claims separately below.

## A.    Duty of Prudence

An ERISA fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Prudence "includes choosing wise investments and monitoring investments to remove imprudent ones." *Allen*, 835 F.3d at 678. "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015); *see also Spano v. Boeing Co.*, 125 F. Supp. 3d 848, 859 (S.D. Ill. 2014) ("The claims that Defendants failed to review plan investment options or eliminate imprudent investment options can constitute a new and distinct breach of Defendants' ongoing fiduciary duty to manage plan assets prudently."). To allege a breach of fiduciary duty, "it is 'sufficient for a plaintiff to plead facts indirectly showing unlawful behavior,' " and "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678 (citation omitted).

At this stage in the litigation and drawing all inferences in Plaintiffs' favor, the Court concludes that Counts I-III sufficiently allege a breach of the fiduciary duty of prudence with respect to ERIP.

Count I alleges that Defendant selected and retained investment options in ERIP that caused ERIP to incur excessive administrative expenses. (R. 1, Compl. ¶¶ 104-10). Count I also alleges that Defendant failed to prudently monitor and evaluate the administrative expenses charged by ERIP's investment options. (*Id.*) These claims are supported by more detailed allegations claiming that ERIP charges administrative fees in excess of industry standards. (*See, e.g., id.* ¶¶ 33-39.) The complaint therefore plausibly alleges that Defendant selected imprudent investment options and failed to evaluate or monitor those investment options in a manner that a prudent person under the circumstances would have. *See Spano v. Boeing Co.,* 633 F.3d 574, 590 (7th Cir. 2011) ("In *Hecker,* we left open the question whether a plan could ever be liable for the selection of investment options in a defined-contribution plan. . . . we conclude that the answer is yes.").

Counts II-III allege that the CREF Stock Account and TIAA Real Estate Account underperformed for years compared to industry standards, and that Defendant failed to prudently evaluate, monitor, and remove those investment options. (R. 1, Compl. ¶¶ 52, 54-62, 66-75 112-15, 117-19.) Plaintiffs also allege that had Defendant prudently monitored and evaluated those investment options, it would have removed or replaced them. (*Id.* ¶¶ 63-65, 76-77.) These facts, accepted as true, sufficiently allege that a prudent fiduciary in like circumstances would have acted differently. *See Howell v. Motorola, Inc.,* 633 F.3d 552, 567 (7th Cir. 2011) ("It is . . . the fiduciary's responsibility . . . to screen investment alternatives and to ensure that imprudent options are not offered to plan participants.").

Defendant relies on *DeBruyne v. Equitable Life Assurance Society of United States*, 920 F.2d 457 (7th Cir. 1990), for the proposition that Plaintiffs can only allege a breach of the duty of prudence by alleging that Defendant had an imprudent decision-making process for selecting

investment options. (R. 22, Am. Mem. at 13, 15; R. 34, Reply at 9-10.) *DeBruyne*, however, dealt with the requisite proof for imprudence on summary judgment rather than the sufficiency of alleging imprudence. *Compare DeBruyne*, 920 F.2d at 465, *with Diebold ex rel. ExxonMobil Sav. Plan v. N. Tr. Invs., N.A.*, No. 09 C 1934, 2010 WL 3700387, at *3 (N.D. Ill. Sept. 7, 2010) ("[W]hether a particular investment choice was imprudent is a particularly fact-sensitive inquiry that would not be appropriate to resolve on a motion to dismiss."). At this stage of the proceedings, Plaintiffs sufficiently allege that Defendant failed to institute a process to adequately monitor, investigate, and evaluate particular ERIP investment options. (*See, e.g.*, R.1, Compl. ¶¶ 53, 63, 65, 76-77, 107, 113-14, 117-18.) Accordingly, Defendant's motion to dismiss Counts I-III as it pertains to ERIP is denied.

**B.    Duty of Loyalty**

Defendant also argues that Plaintiffs fail to sufficiently allege any breach of the fiduciary duty of loyalty and respond to Defendant's argument concerning the same. (R. 22, Am. Mem. at 20-21; R. 34, Reply at 10.)

An ERISA fiduciary is required by the duty of loyalty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1)(A). ERISA imposes on fiduciaries a duty to act with "complete and undivided loyalty to the beneficiaries of the trust" with an "eye single to the interests of the participants and beneficiaries." *Solis v. Hartmann*, No. 10 C 123, 2012 WL 3779050, at *6 (N.D. Ill. Aug. 31, 2012) (citations omitted). The duty of loyalty, therefore, requires a fiduciary to act in the interest of participants and beneficiaries rather than in its own self-interest. *See Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 959

(7th Cir. 1998) ("Deliberately favoring the corporate treasury when administering (as opposed to framing the terms of) a plan is inconsistent with the statute."). It also "encompasses a negative obligation not to mislead the insured, as well as a positive obligation to communicate material information to the insured in circumstances where the fiduciary's silence might itself lead the insured to misapprehend his rights and obligations." *Smith v. Med. Benefit Admin'rs Grp., Inc.*, 639 F.3d 277, 281 (7th Cir. 2011); *see also Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) ("Fiduciaries breach their duties of loyalty and care if they mislead plan participants or misrepresent the terms or administration of a plan.").

Plaintiffs do not plausibly allege that Defendant engaged in any self-dealing or failure to communicate material information. Plaintiffs also do not dispute Defendant's argument that they failed to put forth "a single factual allegation related to [their] duty-of-loyalty claims." (R. 22, Am. Mem. at 21.) A plaintiff's failure to respond to arguments in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n. 1, 721 (7th Cir. 2011) (ruling that forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so."). Plaintiffs' allegations and opposition are directed towards Defendant's imprudence rather than any allegations of disloyalty. (*See, e.g.*, R. 1, Compl. ¶¶ 106-07, 109, 113-14, 117-18; R. 29, Opp'n

at 13-16.) Plaintiffs therefore fail to allege that Defendant breached its duty of loyalty and such claims are dismissed with prejudice.

## IV. Motion to Strike Jury Demand

Finally, Defendant moves to strike Plaintiffs' jury demand. (R. 22, Am. Mem. at 25.) "The general rule in ERISA cases is that there is no right to a jury trial because 'ERISA's antecedents are equitable,' not legal." *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 576 (7th Cir. 2007) (citation omitted); *see also Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 484 (7th Cir. 2007) (observing that in ERISA cases, "the plaintiff has no right to a jury trial[.]"); *Richardson v. Astellas U.S. LLC Emp. Ben. Plan & Life Ins. Co. of N. Am.*, 610 F. Supp. 2d 947, 951 (N.D. Ill. 2009) (granting motion to strike jury demand for ERISA claims and noting that the "Seventh Circuit has long held that a claim for benefits under ERISA is an equitable claim for which there is no right to a jury trial."); *Walker v. Life Ins. Co. of N. Am.*, No. 08 C 6768, 2009 WL 561834, at *1 (N.D. Ill. Mar. 2, 2009) (granting motion to strike jury demand in ERISA case). Plaintiffs point to no legal authority that contradicts the substantial authority above or demonstrates that this case is an exception to the general rule.

Plaintiffs rely on *Ovitz v. Jefferies & Co.*, 553 F. Supp. 300, 301 (N.D. Ill. 1982), but that case is limited to claims brought by plaintiffs whose employment has terminated and are entitled to pension benefits unconditionally and immediately. *See Sider v. Gulf & W. Mfg. Co.*, No. 85 C 1925, 1986 WL 2737, at *1 (N.D. Ill. Feb. 24, 1986) ("[C]laims like *Ovitz's*, brought by those entitled to unconditional and immediate payments, are legal in nature."); *Phillips v. Libby, McNeill & Libby, Inc.*, No. 83 C 766, 1985 WL 793, at *2 (N.D. Ill. Apr. 17, 1985) (describing *Ovitz* as a "limited exception" applicable in cases when benefits are unconditionally and immediately due to a plaintiff upon his or her resignation). Plaintiffs' complaint does not allege

that Defendant is obligated to pay them certain amounts unconditionally and immediately as a result of their resignation or termination. Instead, this action claims breach of fiduciary duties, seeks equitable relief, and is therefore subject to the general rule in ERISA cases that provides no right to a jury trial. *See George v. Kraft Foods Glob., Inc.*, No. 07 C 1713, 2008 WL 780629, at *1, *5-*6 (N.D. Ill. Mar. 20, 2008) (striking jury demand in an ERISA action claiming breach of fiduciary duty); *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 941964, at *3 (N.D. Ill. Mar. 11, 2013) (striking a jury demand pursuant to Rule 12(f) where the only relief available for certain claims was equitable in nature). Accordingly, the Court grants Defendant's motion to strike Plaintiffs' jury demand.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' complaint and strike Plaintiffs' jury demand, (R. 19), is GRANTED in part and DENIED in part as follows: Counts I, II, and III are dismissed without prejudice as to all claims related to the CRP plan and are dismissed with prejudice as to all claims for breach of the duty of loyalty related to the ERIP plan; Count IV is dismissed without prejudice; and Count V is dismissed without prejudice. Defendant's motion is DENIED in all other respects. Any amended complaint that attempts to replead the counts the Court dismissed without prejudice will be due on or before October 27, 2017.

The parties shall appear for a status hearing on November 7, 2017, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 22, 2017**